**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| **CYRUS II PARTNERSHIP,** *et al* | § | **CASE NO: 05-39857** |
| Debtor(s) | § | |
| | § | **CHAPTER  7** |
| | § | |
| **ORIX CAPITAL MARKETS, L.L.C** | § | |
| Plaintiff(s) | § | |
| | § | |
| VS. | § | **ADVERSARY NO. 05-3715** |
| | § | |
| **MONDONA RAFIZADEH** | § | |
| Defendant(s) | § | |

**MEMORANDUM OPINION AND ORDER DENYING SUMMARY JUDGMENT**

For the reasons stated below, the Plaintiff's motion for summary judgment is denied.

**Background**

On June 27, 2005, Cyrus II Partnership ("Cyrus"), Bahar Development, Inc., and Mondona Rafizadeh filed petitions under chapter 7.  Bahar Development is the general partner of Cyrus.  Mondona Rafizadeh is the sole shareholder of Bahar Development.  The Court ordered joint administration on July 20, 2005.

On July 6, 1999, Cyrus (acting through Bahar, which was acting through Mrs. Rafizadeh), borrowed approximately $6 million ("Note") from Love Funding Corporation ("Love Funding").  The Note was secured by a mortgage, security agreement, and an assignment of leases and rents.  An apartment complex near New Orleans, Louisiana (the "Property") is the primary collateral for these loan documents.  Mrs. Rafizadeh also personally guaranteed the Note.

Wells Fargo Bank eventually obtained the loan, and ORIX now acts as Master and Special Servicer for Wells Fargo.  When Cyrus defaulted on the loan, ORIX brought suit in

1

Louisiana state court to enforce the Note and foreclose on the Property. ORIX's suit was consolidated with a countersuit by the Debtors against ORIX. On December 23, 2004, a Louisiana trial court entered final judgment in favor of ORIX and against Mrs. Rafizadeh and the other Debtors. ORIX was awarded $12.8 million.[1] ORIX is the primary creditor in these bankruptcy cases. The Debtors have appealed this judgment to the Louisiana Appellate Court.

On October 4, 2005, ORIX initiated this adversary proceeding by filing an Original Complaint to Determine Dischargeability of Debt. Specifically, ORIX alleges that Mrs. Rafizadeh's liability for the judgment entered by the trial court should not be discharged in Mrs. Rafizadeh's chapter 7 case. ORIX claims that the factual findings of the trial court provide grounds for denial of discharge under § 523(a)(2)(A), (a)(2)(B) and (a)(6). On January 9, 2006, ORIX filed a motion for summary judgment in this matter. On March 30, 2006, a hearing was held on this motion. The Court took the matter under advisement.

## Summary Judgment Standard

"A motion for summary judgment is proper only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Pluet v. Frazier,* 355 F.3d 381, 383 (5th Cir. 2004). The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings and evidence that it believes demonstrate the absence of a genuine issue of material fact. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir 1994). Material issues are those that could affect the outcome of the action. *Wyatt v. Hunt Plywood, Co. Inc.,* 297 F.3d 405, 409 (5th Cir. 2002). Upon an adequate showing in a motion for summary judgment, the burden shifts to the non-moving party to establish a genuine issue of material fact. *Maldonado-Denis v. Castillo-Rodriguez*, 23 F.3d 576, 581 (1st Cir. 1994). The court then views the facts in the light most

---

[1] With interest, the judgment is now estimated at approximately $14.5 million.

favorable to the non-moving party. *St. David's Health Care Sys. v. United States*, 349 F.3d 232, 234 (5th Cir. 2003) (citing *Wyatt*, 297 F.3d 409).

The existence of an underlying judgment in this case raises issues of collateral estoppel. Debtors in bankruptcy dischargeability proceedings are prohibited from re-litigating issues previously decided. *In re Keaty,* 397 F.3d 264, 270 (5th Cir. 2005). A bankruptcy court is to apply the issue preclusion rules of the state where the underlying judgment was issued. *Id.* In this case, the state court judgment was issued in Louisiana. That state's requirements for issue preclusion are identical to those of the Fifth Circuit: (1) the parties must be identical; (2) the issue to be precluded must be identical to that involved in the prior action; (3) the issue must have been actually litigated; and (4) the determination of the issue in the prior action must have been necessary to the resulting judgment. *Id.* at 270-71. Additionally, "the scope of collateral estoppel is circumscribed by the particularized findings of the state court." *Id.* at 271. "Thus, '[c]ollateral estoppel applies in bankruptcy courts only if, *inter alia,* the first court has made specific, subordinate, factual findings on the identical dischargeability issue in question—that is, an issue which encompasses the same *prima facie* elements as the bankruptcy issue—and the facts supporting the court's findings are discernible from that court's record.'" *Id.* (quoting *Dennis v. Dennis (In re Dennis)*, 25 F.3d 274, 278 (5th Cir. 1994)).

### 11 U.S.C. § 523(a)(2)(A)

ORIX claims that the fraud described by the trial court in its Reasons for Judgment is sufficient to deny discharge to Mrs. Rafizadeh under § 523(a)(2)(A). That section of the Bankruptcy Code states:

> A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt … for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained,

by … false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition….

11 U.S.C. § 523(a)(2)(A).

In defining the elements to be fulfilled under § 523(a)(2)(A), the Fifth Circuit has "distinguished between actual fraud on the one hand and false pretenses and representations on the other." *RecoverEdge L.P. v. Penetecost,* 44 F.3d 1284, 1292 (5th Cir. 1995). The elements for each are "different but somewhat overlapping." *In re Mercer,* 246 F.3d 391, 404 (5th Cir. 2001). Specifically, a false representation or pretense requires a knowing and fraudulent falsehood that describes past or current facts and is relied upon by the other party. *See RecoverEdge,* 44 F.3d at 1292; *In re Allison,* 960 F.2d 481, 483 (5th Cir. 1992); *In re Bercier,* 934 F.2d 689, 692 (5th Cir. 1991). In contrast, for the purposes of nondischargeability, actual fraud requires a creditor to prove that "(1) the debtor made representations; (2) at the time they were made the debtor knew they were false; (3) the debtor made the representation with the intention and purpose to deceive the creditor; (4) that the creditor relied on such representations; and (5) that the creditor sustained losses as a proximate result of the representations." *RecoverEdge,* 44 F.3d at 1293 (quoting *In re Roeder,* 61 B.R. 179, 181 (Bankr. W.D. Ky. 1986)).

ORIX's motion for summary judgment alleges that "under any of the applicable standards applying to non-dischargeability claims under section 523(a)(2)(A), the Louisiana Court found the necessary elements that prevent Rafizadeh from discharging her debt to ORIX." (Plaintiff's Motion, p. 24). In her response, Mrs.Rafizadeh argues that the element of reliance required by both false representation and fraud is not met. Specifically, Mrs. Rafizadeh argues that any reliance that may have occurred was reliance by Love Funding, and not reliance by ORIX. The requirement of reliance, it is argued, cannot be fulfilled by proxy—the reliance must

4

have been by the plaintiff itself.  Mrs. Rafizadeh cites *FDIC v. Smith*, 133 B.R. 800 (N.D. Tex.

1991), as support for this position.

It is correct that the Fifth Circuit and the Supreme Court have held § 523(a)(2)(A) to

require actual reliance.  *Field v. Mans,* 516 U.S. 59 (1995)(Fraud exception to discharge requires

actual, justifiable reliance, but not reasonable reliance); *In re Mercer*, 246 F.3d at 413 (5th Cir.

2001)("The 'standard of actual reliance requires little of the creditor'; it must prove that it 'in

fact relied upon the representations of the debtor.'"(quoting *City Bank & Trust Co. v. Vann (In re*

*Vann),* 67 F.3d 277, 284 (11th Cir. 1995))).  However, this Court does not find the actual

reliance position enunciated by *FDIC v. Smith* convincing as applied by Mrs. Rafizadeh.

In *FDIC v. Smith*, the FDIC was acting in its capacity as a receiver for a failed savings

and loan association ("S&L").  Loans had been made by the S&L to two individuals who later

went bankrupt.  The loans were allegedly part of a conspiracy by the debtors and S&L officials

to dissipate the assets of the S&L.  In evaluating the reliance element of § 523(a)(2)(A), the

district court focused on the fact that the FDIC did not provide any money to the debtors:

> What money, property, or services did the [debtors] obtain from the FDIC?
> While it is true that the FDIC … insured [the S&L's] deposits, the
> regulator/insurers did not make the loans.  To say these debtors obtained money
> from the institutional insurer when they borrowed from [the S&L] is to ignore the
> legal relationship between the entities involved….  Under the facts of these cases,
> the false pretenses, false representations, or actual fraud of [the debtors] did not
> cause the FDIC … to make loans….  Actual reliance is a causation-type element
> in a fraud claim.  If a party does not rely on a fraudulent representation, the
> representation cannot be said to have produced an injury to be remedied.

*FDIC v. Smith*, 133 B.R. at 805-806.

In *FDIC v. Smith,* the reliance element was not met by any creditor—there was no

reliance by the original lender of money, and no reliance by the FDIC as successor to the original

lender.  The court's careful analysis of actual reliance focuses on the fact that the *D'Oench,*

5

*Duhme* doctrine cannot make up for the lack of an affirmative element of a fraud claim.   The

issue of reliance via proxy did not arise.   In the present case, however, there was reliance by the

original lender, Love Funding.   The question is whether that reliance can be attributed to a

successor-in-interest, and this is not answered by *FDIC v. Smith*.

The Seventh Circuit tackled a fact pattern nearly identical to that in the present case in

*FDIC v. Meyer*, 120 F.3d 66 (7th Cir. 1997).   Meyer was a businessman who personally

guaranteed a loan on behalf of his company, Hydro-Dynamics.   The loan was originally made by

Commercial Finance.   Hydro-Dynamics defaulted on the loan and Commercial Finance obtained

a judgment in state court.   By the time Meyer filed for bankruptcy the loan had passed through

two banks into the hands of RTC.   *Meyer,* 120 F.3d at 67-68.   Meyer argued that Commercial

Finance's assignment of the loan barred the present holder from pursuing discharge.   The Court

summarized his theory, and responded in kind:

> The theory goes like this: Meyer never misled Federal Bank; Meyer had no
> written or oral agreements with Federal Bank; thus, Federal Bank has no claim
> against Meyer. This argument betrays a fundamental misunderstanding of contract
> law. The fallacy in Meyer's reasoning is best laid out in this example. Creditor
> lends money to Debtor, based on Debtor's representations. Creditor assigns the
> loan to Assignee. Later, Debtor is revealed to have lied to Creditor. (The only
> wrinkle in this case is that Meyer is the guarantor for a defaulting Debtor.) Meyer
> is saying that Assignee has no legal recourse against Debtor. That cannot be true:
> the very reason that the institution of assignment exists is to enable Creditor to
> transfer its rights against Debtor (Meyer) to Assignee (Federal Bank).

*Meyer*, 120 F.3d at 70.

This Court is in full agreement with the reasoning in *Meyer*.   Assigning a loan includes

the assignment of the right to pursue a fraud that was perpetrated upon the original lender.   Love

Funding loaned money to Cyrus and in doing so relied on representations that the state court

found to be fraudulent.   (Reasons for Judgment, p. 20).   The fact that ownership of the loan has

changed cannot mean that Cyrus escapes liability, nor can it mean that Love Funding must prosecute a § 523 fraud action for a loan in which it has no interest.

While the issue of ORIX's standing is thus resolved for the purpose of reliance, the issue of Mrs. Rafizadeh's liability is not. As just stated, ORIX, as successor-in-interest, relied on the misrepresentations of Cyrus. However, ORIX seeks a finding of non-dischargeability with regards to Mrs. Rafizadeh. ORIX argues that "[Mrs. Rafizadeh's] participation in the fraud is not required for a finding that the debt is non-dischargeable. Rather, it is whether the debt itself was obtained by fraud." (Plaintiff's Motion, p. 22).

In order to support such a finding, ORIX argues that Congressional policy underlying § 523(a)(2)(A) requires the protection of victims of fraud. ORIX looks to *Deodati v. M.M. Winkler & Associates (In re Winkler)*, 239 F.3d 746 (5th Cir. 2001), for support. *Winkler* was the case of a partner in an accounting firm who committed fraud on a client. An innocent partner discovered this fraud and reported it to the client. The client, in turn, sued the partnership in state court and won a judgment against the partnership and individual partners. The innocent partner filed for bankruptcy and the defrauded client sought a finding of non-dischargeability under § 523(a)(2)(A) for his state court judgment. The court found the debt non-dischargeable.

In explaining its holding, the Winkler Court discussed the underlying state law and theory regarding partnership law. The court noted that Mississippi (where the state judgment issued), like many other states, holds innocent partners accountable for the misappropriation of funds while under partnership control. *Id.* at 751. It is the case that "[s]tates premise these laws on the notion that partners can best foresee and control the conduct of their agents." *Id.* Consequently, the court summarized its holding by stating that "if a debt arises from fraud and the debtor is

7

liable for that debt under state partnership law, the debt is non-dischargeable under § 523(a)(2)(A)." *Id.*

The Fifth Circuit reinforced the agency basis for the *Winkler* decision in *In re Quinlan*, 434 F.3d 314 (5th Cir. 2005). The Court states that "this circuit imputes fraud to debtors only if the fraudulent representation were made by a formal partner or agent. The relationship between the parties is analyzed under state law. *See, e.g., Winkler,* 239 F.3d at 751…." *Quinlan* at 319. The Court then remanded the case for a determination of the existence of an agency relationship between the debtor and the party that made misrepresentations. *Id.* at 320. Other courts have also read this focus on state partnership law to constrain *Winkler* to cases involving partnerships only. The Eleventh Circuit found that *Winkler* would not help an adversary plaintiff seeking to prevent a debtor's discharge because *Winkler* and similar cases "rely on principles of agency law to impute liability, and they were decided in the context of the business partnership framework." *In re Villa*, 261 F.3d 1148, 1154 (11th Cir. 2001).

While *Winkler* appears to have its basis on partnership law, ORIX argues that the case fundamentally stands for protecting the rights of victims of fraud. *Winkler* provides that § 523(a)(2)(A) "focuses on the character of the debt, not the culpability of the debtor or whether the debtor benefited from the fraud…. In § 523(a)(2)(A), Congress chose, as *Cohen* [*v. de la Cruz,* 523 U.S. 213 (1998)] says, to protect *victims* of fraud." *Winkler* at 749-50. ORIX argues that this is policy enough to prevent the discharge of Mrs. Rafizadeh's liability on the state court judgment.

It is settled law that the exceptions to discharge in § 523 should be strictly construed against objecting creditors and liberally applied in favor of debtors. *Id.* at 805; *In re Foreman,* 906 F.2d 123, 127 (5th Cir. 1990); *In re Boyle*, 819 F.2d 583, 588 (5th Cir. 1987); 4 COLLIER ON

BANKRUPTCY, ¶ 523.05 p. 523-24. (15th ed. rev. 2006).  Thus, the Court is reluctant to extend *Winkler* to this situation.

The Court does not believe that ORIX is arguing that *Winkler* makes Mrs. Rafizadeh liable on the Note because she is the sole shareholder of Bahar, which is the general partner of Cyrus.  It seems unlikely that ORIX would argue that *Winkler* could be used to sidestep the legal principles of limited liability, alter ego and piercing the corporate veil.  To whatever extent ORIX is arguing for such treatment, it is rejected.  Rather, the Court understands ORIX's *Winkler* argument to be based on Mrs. Rafizadeh's guaranty of the Cyrus debt.  In other words, Mrs. Rafizadeh is liable on the debt to ORIX as a result of her personal guaranty of the original Note issued by Love Funding.  Based on this liability, ORIX asks the Court to deny discharge under the fraud exception of § 523.

The obligation in a guarantee is independent of the primary obligation.  This independent undertaking of the guarantor creates an obligation distinct from that of the primary contract.  38A C.J.S. *Guaranty* § 3 (2005).  In Louisiana, a "[s]uretyship is an accessory contract by which a person binds himself to a creditor to fulfill the obligation of another upon the failure of the latter to do so."[2]  LA. CIV. CODE ANN. art. 3035 (1988).  "A contract is accessory when it is made to provide security for the performance of an obligation….When the secured obligation arises from a contract, either between the same or other parties, that contract is the principal contract."  LA. CIV. CODE ANN. art. 1913 (1989).  Upon fulfillment of certain conditions, a surety's liability arises.  The surety's liability remains independent and does not merge with the primary debt. The surety is not a party to the principal contract, and thus cannot be liable directly on it.  The

---

[2] In Louisiana, a guaranty is equivalent to a contract of suretyship.  *Custom-Bilt Cabinet & Supply, Inc. v. Quality Built Cabinets,* 748 So.2d 584, 599 (La. App. 2d Cir. 1999); *Bank of Coushatta v. Patrick,* 503 So.2d 1061, 1068 (La. App. 2d Cir. 1987).  The Louisiana Code uses the term suretyship, and this opinion will do so when referring to Louisiana law.

surety is liable on the contract of surety only and the obligations remain independent. *Hershell Corp. v. firman's Fund Ins. Co.,* 743 So.2d 698, 706 (La. App. 3 Cir. 6/22/99); *Whitney Nat. Bank v. Zewe,* 619 So. 2d 729, 732 (La. App. 4 Cir. 5/27/93)("Although a suretyship is an accessory obligation and can be liquidated by the extinguishment of the principal debt, it is also a separate and distinct obligation from the principal debt.  Thus, one can also perform the obligation under the suretyship while not affecting the principal debt."); *Valliant v. State, Dept. of Transp. and Dev.*, 437 So. 2d 845, 846 (La. 1983)("The fact that the principal contract … does not give rise to a statutory obligation on the part of the governing authority toward a particular claimant does not prevent the separate accessory contract of surety from giving rise to a contractual obligation on the part of the surety toward the claimant"); La. Civ. Code Ann. art. 3035; La. Civ. Code Ann. art. 3040.

The state court judgment precludes any dispute as to whether the principal debt was obtained by fraud:

> The evidence of Cyrus' fraud was overwhelming… the Property did not meet the occupancy and revenue requirements of the loan commitment… Love Funding and Paine Webber testified that they relied on the June Rent Rolls… the fraudulent documents—and only the fraudulent documents—enabled Cyrus to obtain this loan.  But for Cyrus's fraud this loan would not have been made.

(Reasons for Judgment, p. 20).

However, Mrs. Rafizadeh was not a party to the original debt in her individual capacity. Mrs. Rafizadeh was only a party to the independent contract of guaranty.  It is a result of that independent contract that Mrs. Rafizadeh is liable for the amount of the Louisiana state court judgment.  Her liability on the guaranty was triggered by specific events (including fraud by Cyrus) which the Note and guaranty stated would make the loan recourse to Mrs. Rafizadeh. The fact that an event that triggered the guaranty was fraud by the primary obligor does not mean

that Mrs. Rafizadeh committed the fraud.  Because the guaranty is an independent obligation, the Court will except the guaranty from discharge only if the guaranty itself was made fraudulently. That issue is beyond the scope of the summary judgment record before the Court.

Liability that is triggered by an independent fraud does not destroy the independence of the obligations.   In order for Mrs. Rafizadeh's debt to be found non-dischargeable under § 523(a)(2)(A), the contract that needs to be examined is the contract of guaranty.   It is the guaranty itself which must be shown to meet the elements of § 523(a)(2)(A) fraud.   ORIX's argument to except the guaranty liability from discharge is based on fraud in obtaining the Note, not the guaranty.   ORIX has not claimed that the summary judgment evidence satisfies the necessary elements of fraud under *RecoverEdge* with regards to the guaranty.   The failure to prove fraud as to the guaranty, along with the fact that exceptions to discharge are to be strictly construed, requires that ORIX's motion for summary judgment on § 523(a)(2)(A) grounds be denied.

### 11 U.S.C. § 523(a)(2)(B)

ORIX seeks summary judgment on the grounds that the Louisiana judgment against Mrs. Rafizadeh is non-dischargeable under 11 U.S.C. § 523(a)(2)(B).  That section provides:

> A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt … for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by use of a statement in writing that is materially false; respecting the debtor's or an insider's financial condition; **on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied**; and that the debtor caused to be made or published with intent to deceive….

11 U.S.C. § 523(a)(2)(B).

Absent any ambiguity, "[t]he plain meaning of legislation should be conclusive, except in the rare cases in which the literal application of a statute will produce a result demonstrably at

odds with the intentions of its drafters." *U.S. v. Ron Pair,* 489 U.S. 235, 242 (1989)(citing *Griffin v. Oceanic Contractors, Inc.* 458 U.S. 564, 571 (1982)(internal quotation marks omitted)).

In this case, the text of the Code requires that the creditor to whom the debtor is liable reasonably relied on a materially false statement. The Court finds above that Orix may rely on its predecessor's rights under § 523(a)(2)(A). Section 523(a)(2)(B) differs from § 523(a)(2)(A) because § 523(a)(2)(B) has an explicit party-reliance requirement. Section 523(a)(2)(B) states that reliance must exist by "the creditor to whom the debtor is liable" 11 U.S.C. § 523(a)(2)(B). The only other reported case dealing with this issue under § 523(a)(2)(B) held that "[a] creditor to whom a Debtor's obligation is assigned, must demonstrate that not only did the assignor reasonably rely on the Debtor's false representation, but it also relied on the false representation in deciding to receive the assignment." *In re Whitenack*, 235 B.R. 819, 826 (Bankr. D.S.C. 1998). This Court agrees. Inasmuch as Congress has included the requirement of reliance by the present holder of a claim in § 523(a)(2)(B), the Court finds that the rights of a successor-holder of a debt to assert reliance by a predecessor do not exist under this subsection.[3]

The Louisiana state court judgment makes Mrs. Rafizadeh liable to ORIX for the Note. However, ORIX never relied on a materially false statement made by Mrs. Rafizadeh. It was Love Funding that relied on statements by Cyrus, and perhaps Mrs. Rafizadeh: "Witnesses for Love Funding and Paine Webber testified that they relied on the June Rent roll …. That is, the fraudulent documents—and only the fraudulent documents—enabled Cyrus to obtain this loan."

---

[3]   The Court notes that a number of Courts have found that a successor-holder may not inherit any reliance rights under § 523(a)(2)(A) or (a)(2)(B). *See In re Hurley,* 285 B.R. 871, 876 (Bankr. D.N.J. 1998); *In re Bui,* 188 B.R. 274, 279 (Bankr. N.D. Cal 1995). The Court respectfully disagrees with those Courts for the reasons set forth in *Meyers.* The Court is unable to locate additional authority solely with respect to § 523(a)(2)(B) or any authority analyzing the difference in the Code between the two subsections as it applies to successor rights.

(Reasons for Judgment p. 20).  The reliance requirement of § 523(a)(2)(B) is not established by the Louisiana state court judgment with regards to ORIX.

## 11 U.S.C. § 523(a)(6)

Finally, ORIX seeks summary judgment based on its claim that Mrs. Rafizadeh's debt is nondischargeable under 11 U.S.C. § 523(a)(6).  That section provides:

> A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt … for willful and malicious injury by the debtor to another entity or to the property of another entity.

11 U.S.C. § 523(a)(6).

The Supreme Court, in *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998), interpreted § 523(a)(6) to encompass only acts done with actual intent to cause injury.  ORIX claims that Mrs. Rafizadeh committed three acts that satisfy § 523(a)(6): Mrs. Rafizadeh prohibited ORIX from inspecting the Arlington Property; Mrs. Rafizadeh transferred or attempted to transfer the Property to another entity; and, Mrs. Rafizadeh appropriated insurance proceeds.  (Plaintiff's Motion, p. 30).

The Louisiana court's Reasons for Judgment provides that "Cyrus refused ORIX the right to inspect the Property….   Because of Mrs. Rafizadeh's refusal to permit an inspection in January 2002, the Court finds that the loan is fully recourse…." (Reasons for Judgment, p. 22). While preventing an inspection appears to have been willful, there is nothing in the Reasons for Judgment to support the *Kawaauhau* requirement of actual intent to cause injury.  The reasons behind "Mrs. Rafizadeh's refusal to permit an inspection in January 2002" are not given in the Reasons for Judgment.  *Id.*  There is also no proof that the delay of inspection caused injury or was substantially certain to cause injury.  *See In re Canton,* 157 F.3d 1026, 1030 (5th Cir. 1998)(Holding that willful and malicious includes an objective substantial certainty of harm or a

13

subjective motive to cause harm).  Consequently, there remains an issue of genuine fact and the burden for summary judgment has not been met.  *Pluet v. Frazier,* 355 F.3d at 383.

The transfer of the Property to another entity also does not meet the requirements of § 523(a)(6) in summary judgment.  There is no proof that the transfer or attempted transfer was carried out with an objective substantial certainty of harm or a subjective motive to cause harm. ORIX argues that a transfer in "breach of a security agreement may give rise to nondischargeable liability when the debtor's conduct is knowing and certain to cause financial harm." (Plaintiff's Motion, p. 30, quoting COLLIER ON BANKRUPTCY, ¶ 523.12[3] (15th ed.)).  This assumes the conclusion of a mental state; it does not resolve the lack of evidence of a genuine factual issue. Furthermore, the Code requires injury by the debtor.  However, the property was owned by Cyrus, and not by Mrs. Rafizadeh.  Finally, there is no evidence that ORIX or the Property was actually injured by the transfer.  On the contrary, Mrs. Rafizadeh offers evidence that the property was appraised at an amount which exceeded the principal and interest on the Note. (Defendant's Response, ¶ 43).

ORIX's third allegation—that Mrs. Rafizadeh appropriated insurance proceeds—does seem objectively certain to cause harm to ORIX.  However, the issue of party identity is again a problem.  The Reasons for Judgment provide that "Cyrus received an insurance proceed check…. Cyrus did not turn over the insurance proceeds…. Cyrus has exercised dominion and control over the insurance proceeds…."  (Reasons for Judgment, p. 24).  These findings implicate the corporate entity Cyrus, and not Mrs. Rafizadeh.  Absent a showing that Mrs. Rafizadeh is liable for the conversion of the insurance proceeds, ORIX has not met its burden in summary judgment.

**Conclusion**

ORIX seeks summary judgment on its § 523(a)(2)(A), (a)(2)(B) and (a)(6) claims of nondischargeability.  Its motion is based on the findings of the Louisiana state court judgment and rules of collateral estoppel that bind this Court.  For the reasons set forth above, the Court finds that ORIX has not met its burden for summary judgment on any of its nondischargeability claims.  Consequently, ORIX's motion for summary judgment is denied.

Signed May 22, 2006, at Houston, Texas.

MARVIN ISGUR
United States Bankruptcy Judge